HOOD, Judge.
Plaintiff, The Rayne Acadian-Tribune, Inc., owner and publisher of two newspapers, instituted this suit against Church Point Hardware & Appliance, Inc., for a sum of money alleged to be due plaintiff for advertisements published in its newspapers at the request of defendant. Defendant filed an answer in which it denies the indebtedness, and specially pleads payment of the account. It also denies liability, in the alternative, on the ground that the ads were published without authorization from any of its officers or agents. After trial of the case, judgment was rendered by the district court in favor of plaintiff for the amount claimed, and defendant has appealed from that judgment.
Both parties agree that only questions of fact are presented in this case, and that if plaintiff makes out a prima facie case, then the burden of proof shifts to defendant to establish its special defenses of payment or lack of authorization.
The evidence shows that on June 14, 1954, plaintiff purchased two existing newspapers, known as “The Rayne Acadia Tribune” and “The Church Point News,” and that it has published these newspapers since that time. Prior to that sale, advertisements for defendant had been published in these papers, and at the time of the sale, defendant owed the former owner approximately $1,200.00 for that advertising. After plaintiff acquired the newspapers, additional advertisements for defendant were carried in them from time to time, until about February, 1958, and for these advertisements plaintiff charged defendant the total sum of $3,417.-34.
We think the evidence clearly is sufficient to make out a prima facie case that defendant owed the former owner approximately $1,200.00 when the sale of the newspapers was completed, and that defendant became indebted to plaintiff for the total sum of $3,417.34 for advertisements carried after that sale.
Defendant has made a number of payments on his advertising account since the newspapers were sold to plaintiff, all of which payments were made by check and all of which amount to the aggregate sum of $3,273.74. Most of these checks were made payable to “Church Point News,” which was the name of one of the newspapers both before and after the sale, and the checks were delivered to the manager of plaintiff company, who was then also serving as the collection agent for the former owner of the newspapers. The manager credited the first six payments made by defendant, amounting to the aggregate sum of $1,200.-00, to the account due the former owner of the papers, which payments were sufficient to completely retire that indebtedness. The remaining payments made by defendant, aggregating $2,073.74, were then applied to the debt alleged to be due plaintiff for advertising carried after June 14, 1954. Plaintiff contends that after applying these credits» defendant still owes it a balance of $1,343.60', which is the amount claimed in this suit and the amount awarded to plaintiff by the trial court.
Defendant argues that all of the payments made by it after plaintiff acquired ownership of the newspapers should have been applied as credits on his indebtedness to plaintiff, and that none of said payments should have been applied to the old account which defendant owed the former owner of the newspapers. It contends that the trial court erred in imputing some of the payments *692 made by plaintiff after June 14, 1954, to the old account.
Plaintiff produced evidence tending to show that defendant, in making the above-mentioned payments, understood and intended that the first payments made by it after plaintiff acquired the newspapers were to be credited toward the payment of the old account until that account was paid in full, that defendant knew as these first payments were made that they were being deposited to the account of the former owner in a local bank, and that the manager of defendant company acknowledged this indebtedness on a number of occasions. Defendant, on the other hand, produced evidence tending to show that the payments made by it after June 14, 1954, were intended to be applied only to its current account with plaintiff, that it had been informed that the old account had been can-celled, and that it had never acknowledged any indebtedness to plaintiff.
It is apparent from the foregoing that a substantial part of the testimony produced by one of the parties to this suit cannot be reconciled with that produced by the other. The trial judge submitted excellent written reasons for judgment, however, in which he carefully analyzed all of the evidence, and after doing so he concluded that the first six payments made by defendant, aggregating $1,200.00, were properly credited toward the payment and retirement of the old account, and that defendant is entitled to have only the remaining payments imputed to the account which it owes plaintiff. In arriving at that conclusion, the trial judge said:
“Considering the accuracy of plaintiff’s testimony and the numerous discrepancies in the testimony of defendant in this regard, the Court must conclude that there is no merit to defendant’s contention.”
We think the evidence supports the conclusion reached by the trial judge, and accordingly, we conclude that defendant is entitled to a credit of only $2,073.74 on his indebtedness to plaintiff, leaving a net balance of $1,343.60 due.
The next question presented is whether the advertisements, for which plaintiff seeks to recover, were authorized by defendant. The testimony produced as to this issue also is conflicting. The manager of defendant company testified that before any of these ads were published, he entered into an agreement with plaintiff’s manager to the effect that if the distributor of the product advertised would pay a portion of the amount due for the ad, then defendant would remit that amount to plaintiff as full payment for the advertisement, but that defendant would not be required to pay anything if the distributor failed to make such a payment. He testified that, in any event, the advertisements were not to cost defendant anything, and that neither he nor any other agent of defendant company ever authorized plaintiff to advertise anything “except a sale now and then.” The manager of plaintiff company denies that any such agreement was ever entered into, and he testified that every advertisement carried in these newspapers was specifically authorized by defendant’s manager with the understanding that defendant would be responsible for the cost of the ad regardless of whether any portion of that cost was shared by the distributor. The statements of both of these witnesses were corroborated to some extent by the testimony of others.
The trial judge concluded that defendant had failed to allege or to prove that such an agreement had been entered into, or that any particular item of advertisement had not been authorized, and accordingly, he rejected this special defense and held that defendant was obligated to plaintiff for these advertisements. We find no error in this conclusion of the trial judge.
For the reasons herein assigned, therefore, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendant-appellant .
Affirmed.